B 104 [08/07]



| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) 11-90530 -JM |
|---|---|

| **PLAINTIFFS** LEONARDO OROZCO | **DEFENDANTS** DEUTSCHE BANK NATIONAL TRUST COMPANY, A National Banking Association, JP MORGAN CHASE BANK, NA, CHASE HOME FINANCE, LLC, a Limited Liability Corporation, Mortgage Electronic Registradion System, Goldman Sachs |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) LEONARDO OROZCO, In Pro Per 4260 Skyline Rd. Carlsbad, CA 92008 Telephone: (760 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) ☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☐ Other ☐ Trustee | **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☑ Creditor ☐ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

FAIR DEBT COLLECTION PRACTICES ACT;  ROSENTHAL ACT; CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200; 4)  SET ASIDE TRUSTEE SALE; 5)  CANCEL TRUSTEE'S DEED; 6)  QUIET TITLE; 7)  ACCOUNTING; 8)  ABUSE OF PROCESS; and 9) FRAUD

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☑ 11 - Recovery of money/property - § 542 turnover of property
☐ 12 - Recovery of money/property - § 547 preference
☐ 13 - Recovery of money/property - § 548 fraudulent transfer
☑ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☑ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☑ 71 - Injunctive relief - reinstatement of stay
☑ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☑ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ 5,000,000 |
| Other Relief Sought | |

Case # : 11-90530-JMAD0
Debtor.: OROZCO
Judge..: JAMES MEYERS
Chapter: AD0
---------------------------------
Filed  : November 18, 2011  14:19:38
Deputy : FRANCES MALDONADO
Receipt: 216418
Amount : $0.00
---------------------------------

B 104

B 104 (Page 2) [08/07]

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>LEONARDO OROZCO | BANKRUPTCY CASE NO.<br>07-06985-JM7 |

| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of California | DIVISIONAL OFFICE | NAME OF JUDGE<br>Meyers |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE<br>November 16, 2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>LEO OROZCO, IN PRO SE |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B 104

LEONARDO OROZCO, In Pro Per
4260 Skyline Road
Carlsbad, CA 92008
Telephone:  (760) 579-2871

Debtor in Pro Per

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Adversary Proceeding No.: |
| LEONARDO OROZCO, | Bankruptcy Case No.: 07-06985-JM7 |
| Debtor/Plaintiff, | **COMPLAINT FOR DAMAGES & OTHER EQUITABLE RELIEF:** |
| v. | 1) DECLARATORY RELIEF; |
| | 2)  FRAUD; |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, A National Banking Association, JP MORGAN CHASE BANK, NA, A National Banking Association, CHASE HOME FINANCE, LLC, MORTGAGE ELECTRONIC REGISTRATION SERVICE, Inc. (MERS), METROCITIES MORTGAGE, LLC, GOLDMAN SACHS, NA, PITE DUNCAN, LLP, and Does 1 to 10, inclusive, | 3)  CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 |
| | 4)  SET ASIDE TRUSTEE'S SALE |
| | 5)  CANCEL TRUSTEE'S DEED |
| | 6)  QUIET TITLE |
| | 7)  ACCOUNTING |
| | 8)  ABUSE OF PROCESS |
| Defendants. | 9) FAIR DEBT COLLECTION PRACTICES ACT |
| | 10) ROSENTHAL ACT |
| | <u>DEMAND FOR JURY</u> |

-1-

COMES NOW PLAINTIFF LEONARDO OROZCO who alleges damages and seeks equitable relief against the Defendants, and each of them as follows:

## I. JURISDICTION AND VENUE

Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 7 case under Title 11 and concerns property of the Debtor in that case. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.

This Court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code.

This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a non-core proceeding, Plaintiff consents to the entry of a final order by the Bankruptcy Judge. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

## II. PRELIMINARY ALLEGATIONS

The real property, which is the subject matter of this action, is located at 4260 Skyline Road, Carlsbad, California 92008. Plaintiff, LEONARDO OROZCO, is an individual and is a resident of Carlsbad, California in this judicial district and, at all times relevant hereto, was the owner of the real property located at 4260 Skyline Rd, Carlsbad, California 92008 (hereinafter "the Subject Property").

Defendant JP MORGAN CHASE BANK, NA, (hereinafter "JP MORGAN") is a banking association duly qualified to do business under the laws of the United States of America, and the State of California, and is doing business in the State of California,

-2-

1    County of San Diego, and within this judicial district.

2         Defendant CHASE HOME FINANCE, LLC, (hereinafter "CHASE") is a

3    wholly-owned subsidiary and/or affiliated company of JP MORGAN, and at all time

4    relevant  hereto was doing business in the State of California, County of San Diego and

5    within this judicial district.

6         Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY (hereinafter

7    "DEUTSCHE") is a banking association duly qualified to do business under the laws of the

8    United States of America, and the State of California, and is doing business in the State of

9    California, County of San Diego, and within this judicial district.

10        Plaintiff herein does not know the true names and capacities of Defendants sued

11   herein as DOES 1 through 100, inclusive, and, therefore, sues said Defendants by such

12   fictitious names.  Plaintiff will ask leave of Court to amend this Complaint to set forth the

13   true names and capacities of each of the fictitiously named Defendants when the same

14   shall have been ascertained.

15        Plaintiff is informed and believes, and thereon alleges, that at all times herein

16   concerned, Defendants, and each of them, were, and now are, the agents, servants, and

17   employees of each other, and of the remaining Defendants, and each of them, and were, at

18   all times herein concerned, acting within the course, scope, and authority of such actual

19   and/or ostensible agency or employment, and with the knowledge, consent, and

20   permission of each other, and the remaining Defendants, and each of them.

21        On or about June 6, 2005, Metrocities Mortgage LLC dba No Red Tape

22   Mortgage (hereinafter referred to as "Metrocities Mortgage"), made a loan to Plaintiff in

23   the principal amount of One Million Dollars ($1,000,000.00) evidenced by a Promissory

24   Note (hereinafter "Note") and secured by a Deed of Trust (hereinafter "Deed of Trust")

25   encumbering the property.  The Deed of Trust listed Mortgage Electronic Registration

26   Systems (MERS) as the beneficiary and nominee for the beneficiary and assigns.  The

27   Deed of Trust was recognized in the Official Records, County of San Diego, on June 6,

28                                    -3-

Bankruptcy Case No.: 07-06985-JM7
Adversary Complaint

1   2005, as Document Number 2005-0473187, a true and correct copy of the Deed of Trust,

2   as recorded, is attached hereto and incorporated herein as Exhibit "A".

3           On or about September 1, 2005, Metrocities Mortgage assigned the servicing

4   rights from the original servicer under the Deed of Trust, Fidelity Title Insurance

5   (hereinafter "Fidelity"), to JP MORGAN through a recorded assignment.

6           On or about September 1, 2005 Metrocities Mortgage sold, transferred and/or

7   assigned the Note to Goldman Sachs Mortgage Securities Corporation for good and

8   valuable consideration, without recourse.

9           On or about May, 2007, Plaintiff defaulted on Plaintiff's obligations under the

10  Note and Deed of Trust.

11          On or about July 24, 2007, NDEx West, LLC, sent a Notice of Default to

12  Plaintiff.  A true and correct copy of the Notice of Default is attached hereto and

13  incorporated herein as Exhibit "B".

14          On or about August 17, 2007, MERS purportedly assigned the Deed of Trust to

15  DEUTSCHE BANK.

16          On or about October 18, 2007, DEUTSCHE BANK purportedly substituted the

17  original Trustee under the Deed of Trust (Fidelity) with NDEx West, LLC.

18          On or about October 26, 2007, NDEx West, LLC, sent Plaintiff a Notice of

19  Trustee's Sale.

20          On December 3, 2007, Plaintiff/Debtor filed for Chapter 13 bankruptcy in the

21  United States Bankruptcy Court for the Southern District of California.  In January or

22  February of 2008, Plaintiff/Debtor's Chapter 13 bankruptcy case was converted to a

23  Chapter 7 bankruptcy case.

24          On March 27, 2008, DEUTSCHE BANK filed a Motion for Relief from

25  Automatic Stay in the United States Bankruptcy Court for the Southern District of

26  California.  A true and correct copy of the Motion is attached and incorporated herein as

27  Exhibit "D."  When filing said Motion, DEUTSCHE BANK concealed from this Court

28                                          -4-

1    and Debtor the true facts about the ownership of the Note, including that DEUTSCHE

2    BANK did not have stranding to file said Motion, as alleged herein.

3            On April 17, 2008, DEUTSCHE BANK'S unopposed Motion for Relief from

4    Automatic Stay was granted.  A true and correct copy of the Order is attached hereto and

5    incorporated as Exhibit "E".

6            On or about May 16, 2008, NDEx West, LLC held a foreclosure sale as a

7    foreclosing trustee for the foreclosing beneficiary DEUTSCHE BANK. A Trustee's Deed

8    Upon Sale purported to grant all beneficial interest in the Subject Property to DEUTSCHE

9    BANK.

10           DEUTSCHE BANK subsequently caused to be filed unlawful detainer

11   proceedings against Plaintiff/Debtor to obtain possession of the Subject Property.  A true

12    and correct copy of the Trustee's Deed Upon Sale is attached hereto and incorporated

13   herein as Exhibit "C".

14           DEUTSCHE BANK was represented by PITE DUNCAN, LLP, with regard to

15    the abovementioned bankruptcy proceedings and Unlawful Detainer proceedings.

16           DEUTSCHE BANK did not have a right to file the Motion for the Lift of Stay

17   or conduct the foreclosure sale as the foreclosing beneficiary because at no time

18   DEUTSCHE BANK was a beneficiary in respect to the Note or Deed of Trust.

19   DEUTSCHE BANK never owned the Note because it was transferred from the Loan

20    Originator (Mertrocities Mortgage) to the Loan Depositor (Goldman Sachs Mortgage

21   Securities Corporation) for good and valuable consideration and without recourse, on or

22   before September 1, 2005 (thus, before the purported assignment of the Note and/or Deed

23   of Trust from MERS to DEUTSCHE BANK on August 17, 2007).  After the assignment

24   to Goldman Sachs, the Note was placed in a loan securitization/mortgage pool, such as

25   GSAA Home Equity Trust 2005-MTR1, on or before October 10, 2005.  The

26   securitization transfers were not recorded nor disclosed, and Plaintiff/Debtor learned about

27   these transfers affecting his chain of title in or about September 2011.

28                                  -5-

**Securitization**

Securitization that occurred in Plaintiff's case involves numerous transactions, and typically proceeds as follows:

1st Transaction:    The sale of securities to unsuspecting Investors.

2nd Transaction:    The Investors' money was put into an account at an investment banking firm.

3rd Transaction:    The investment banker divided the money between fees for itself and funds to aggregators or a Depository Institution (i.e., Loan Depositor, such as Goldman Sachs Mortgage Securities Corporation).

4th Transaction:    The closing of the loan with the borrower, such as Plaintiff LEONARDO OROZCO. The loan was funded with the money from the Investors after deducting large undisclosed fees.  Furthermore, because of the disparity between the interest payable to the investors and the interest payable by the borrower, a yield spread was created, adding large sums to what the investment banker took without disclosure to the Investors or the borrower.

5th Transaction:    The assignment and acceptance of the mortgage loan into between one and three asset pools (such as GSAA Home Equity Trust 2005-MTR1), each bearing distinctive language describing the pool such that they appeared to be different assets than already presumed to exist in the first pool.

6th Transaction:    The receipt of insurance or counter-party payments on behalf of the pool pursuant the documents creating the securitization structure.

7th Transaction:    The re-securitization of the pooled assets between one and three times.

8th Transaction:    The federal bailout payments and receipts allocable to the balances owed on the loans that were claimed to be part of the pool.

9th Transaction:    The foreclosure by parties involved in the securitization scheme, who might or might not be named on the original Deed of Trust and who never provided

-6-

1    any money in connection with the mortgage loan, such as DEUTSCHE BANK.

2    <u>10th Transaction</u>:    Attorneys (in Plaintiff's case, PITE DUNCAN LLP) were hired

3    to evict the home owner.

4    Because of the numerous and complex transactions, securitization involves many

5    documents.  Such documents include: the closing documents between loan Originators,

6    Servicers, Special Purpose Vehicles, and Aggregators, including the Pooling and Service

7    Agreements, the Assignment and Assumption Agreements, and the Master Service

8    Agreements, if separate.  Significantly, none of these documents include the Borrower as

9    party or reference any specific debtor or borrower because the debtor is unknown when

10   the securitization structure is created.

11   Each securitization has a Sponsor, a prime mover of the securitization.  Sometimes,

12   the sponsor is the Originator of the mortgage loan, such as Metrocities Mortgage.  The

13   Sponsor arranges for the closing of the mortgage instruments with the

14   borrower/homeowner (the promissory note and the deed of trust).  The Sponsor then

15   arranges for the mortgage loans to be transferred to an entity known as the Depositor

16   (such as Goldman Sachs Mortgage Securities Corporation in this case), which then

17   transfers the promissory note to the securitization trust (such as GSAA Home Equity Trust

18   2005-MTR1).

19   During the numerous transactions, the Note was never properly assigned.

20   Furthermore, the obligor of the certificates in a securitization is allegedly to the trust that

21   purchases the loans in the collateral pool.  However, this cannot be true because title to

22   the mortgage loans was never perfected.  In addition, the securitization trust is a mere

23   conduit that has no real trustee and has no power to do anything.  When a trust has no

24   assets, it  cannot satisfy the liabilities of an issuer of securities (the certificates).  The law

25   therefore treats the Depositor as the issuer of an asset-backed certificate.  *See Federal*

26   *Home Loan Bank of San Francisco v. Deutsche Bank*, Case No. CGC-10-497839; *Federal*

27   *Home Loan Bank of San Francisco v. Credit Suisse*, CGC-10-497840; *Boilermaker*

28                                                    -7-

*National Annuity Trust Fund v. WAMU Mortgage Pass Through Certificates*, United States District Court, Western District of Washington at Seattle, Case No. C090037; *New Orleans Employee's Retirement System v. FDIC*, United States District Court, Western District of Washington at Seattle, Case No. 2:09-cv-00134-MJP (2009); *Doral Bank Puerto Rico v. Washington Mutual Asset Acceptance Corp.*, United States District Court, Western District of Washington at Seattle, Case No. 2:09-cv-01557-MJP (2010).

The flawed and/or missing assignments, undisclosed and unrecorded transactions, and breaches in the chain of title resulting from securitization have given rise to numerous lawsuits by the borrowers whose properties were foreclosed upon by entities that had no standing and no right to do so, including Plaintiff's lawsuit currently before this Court.

## III. FACTUAL ALLEGATIONS

The core of this action arises out of a loan made to Plaintiff that was securitized, and which was "predatory" by the legal definition. On or about June 6, 2005, a Deed of Trust was executed relating to the Subject Property. This Deed identified: (1) "Borrower" as the Plaintiff LEONARDO OROZCO; (2) "Lender" as Metrocities Mortgage LLC dba No Red Tape Mortgage (hereinafter "Metrocities Mortgage"); (3) "Trustee" as Fidelity Title Insurance. The Deed of Trust is attached hereto and incorporated herein as Exhibit "A".

During the closing of the loan, the Loan Originators(s) (such as Metrocities Mortgage which is named as the Lender under Plaintiff's Note and Deed of Trust) acquired the loan, evidenced by a promissory note and secured by a trust deed on the home. The terms of the loan was memorialized primarily in a promissory note. At an undisclosed time after the closing, the Note was acquired by the Loan Depositor (Goldman Sachs Mortgage Securities Corporation or similar entity). Significantly, the Note was never properly assigned to anyone.

The funds for the Plaintiff's mortgage loan were provided by Investors, and

-8-

1  fraud was committed in the securitization process.  The Deed of Trust identified various

2   parties as the "lenders" (such as Metrocities Mortgage).  This was false and misleading

3  because, *inter alia,* the funds came from Investors as explained above.  In agreeing to

4   sign the loan documents and to encumber the Subject Property with a deed of trust,

5  Plaintiff relied upon promises and misrepresentations made to him by the Loan

6  Originator(s).

7          The Originators concealed from Plaintiff their intent to securitize the loan and

8   misrepresented the identity of the party providing the funds for his loan.  After the loan

9   was securitized, assignments of a deed of trust were recorded which purportedly assigned

10  thedeed of trust from the original named "lender" to third parties, such as DEUTSCHE

11  BANK. These assignments were invalid, created fraudulently and/or forged.

12          The Loan Originator(s), Loan Depositor(s), and each and all other Defendants

13  involved in Plaintiff's mortgage loan transactions have made false statements concerning

14  the amounts owing at various points in time from Plaintiff.  The amounts claimed to be in

15  default are incorrect and/or include charges not permitted under the loan documents or by

16  law.  In fact, Defendants have never shown the proper amounts claimed owing on the

17  loans, and Plaintiff is informed and believes Defendants cannot do so, due at least in part

18  to the massively complex mathematical calculations that would be required.

19          Additionally, in recording Notices of Defaults ("NODs"), Defendants unlawfully

20  initiated non-judicial foreclosure proceedings against Plaintiff by improperly claiming

21  amounts not owing, and knowingly misrepresenting that Defendants had standing to

22  initiate said foreclosure proceedings.  The NOD states, *inter alia,* "NOTE(S)... under said

23   Deed of Trust ... are presently held by the Beneficiary...." (Notice of Default attached

24  hereto and incorporated herein as Exhibit "B").  These statements were false because the

25  foreclosing parties did not hold the Note connected to the Plaintiff LEONARDO

26  OROZCO'S Trust Deed.

27          Defendants, in committing the acts alleged in this Complaint, are engaging in a

28                                                            -9-

1  pattern and practice of unlawful activity.  In pursuing the non-judicial foreclosure,

2  Defendants represented that they had the right to payment under the Note in connection

3  with the loan, secured by a Deed of Trust.  Whereas, in fact, the Defendants were not in

4  possession of the Note and they were neither holders of the Note or assignees of the Note

5  or Deed of Trust entitled to payment.  Therefore, they did not have any rights under the

6  law to proceed to the foreclosure.

7         Specifically, DEUTSCHE BANK did not have any right to conduct the

8  foreclosure sale and acquire the Trustee's Deed Upon Sale.  This is because only the

9  current beneficial owner has the right to foreclose, and the current beneficial owner is the

10 only lawful party who can provide instructions to the trustee on the amount of money to

11 accept at the sale, or to "credit bid" up to the amount owed on the loan.  DEUTSCHE

12 BANK was not such current beneficial owner, and therefore the foreclosure sale was

13 conducted unlawfully and is void.  In fact, none of the Defendants involved in the

14 securitization of Plaintiff's Note, and none of their authorized agents who have played a

15 part in the non-judicial foreclosure proceedings were entitled to receive payment from the

16  loan proceeds, or title to or possession of the Subject Property, or to give instructions to

17 any trustee under the deed of trust.  The making of the assertion in the foreclosure

18 proceedings that DEUTSCHE BANK or any other Defendant was entitled to foreclose

19 based on amounts not properly owing from Plaintiff to such Defendants, is an act of fraud

20 and deceit.

21         The intent to securitize, the securitization of the Subject Loan, and the fraudulent

22 acts and omissions involved in the origination, transfers and securitization of the Subject

23 Loan, were concealed from Plaintiff.  In particular, Defendant DEUTSCHE BANK

24 claimed to have purchased the Subject Property at the trustee sale; however, DEUTSCHE

25 BANK is not bona fide purchaser, had no legal right to possession, was informed of such,

26 and was asked to cooperate but instead pursued an unlawful detainer.

27         Defendants, by and through their attorneys, including the Defendant Law Firm

28                                        -10-

1  (PITE DUNCAN LLP), filed an Unlawful Detainer eviction action against Plaintiff.  The

2  Defendant Law Firm claimed that their clients were the rightful owners of the Subject

3  Property and were entitled to possession.  At the time the Unlawful Detainer action was

4  filed, Defendant Law Firm knew of the material defects of said foreclosure sales and that

5  their clients had no right to bring Unlawful Detainer proceedings against Plaintiff.  The

6  Defendant Law Firm was/is fully aware that Plaintiff's loan was securitized, and that their

7  clients had no legal right to foreclose, and intentionally concealed this from the courts in

8  the eviction actions in order to unlawfully obtain ownership and possession of Plaintiff's

9  property.

10

11                          **IV. CAUSES OF ACTION**

12                          **FIRST CAUSE OF ACTION**

13                          **DECLARATORY RELIEF**

14                          (Against All Defendants)

15          Plaintiff repeats and re-alleges each and every allegation contained above.

16          Defendants have concealed their true roles from the Plaintiff, their intent to

17  securitize the Note, and the fact that the Note was in fact securitized.  In addition,

18  Defendants have concealed numerous unrecorded transfers and/or assignments of

19  Plaintiff's Note, and instead recorded assignments that they knew were invalid, void,

20  unlawful and/or fraudulent.  Plaintiff contends that Defendants had no right to conduct

21  the foreclosure of Plaintiff's Property because the Defendants, and DEUTSCHE BANK

22  in particular, were not the beneficial owners of the Note, nor had any rights under the

23  Deed of Trust at the time Defendants initiated, carried out, and concluded the foreclosure

24  proceedings.  As a result, the foreclosure sale and the Deed of Trust Upon Sale

25  purportedly granting ownership of Plaintiff's Property to DEUTSCHE BANK, are void.

26          Plaintiff does not know who are the beneficial owners of the Note (if such

27  beneficial owners exist), and who is the party/parties with rights to payments under the

28                                      -11-

Bankruptcy Case No.: 07-06985-JM7
Adversary Complaint

1   original Note.  Plaintiff contends that, due to the invalid assignments and the separation

2   of the Note and Deed of Trust, any creditor claiming payments under the Note is an

3   unsecured creditor.

4           The Defendants contend to the contrary.  Thus, an actual controversy exists and

5   Plaintiff is entitled to a declaration by this Court resolving this controversy.  Plaintiff

6   requests that the Court grant appropriate Declaratory Relief, and require any party

7   claiming to be a Creditor with rights in Plaintiff's Property produce documentation

8   proving their rights satisfactory to the Court.

9

10                          **SECOND CAUSE OF ACTION**

11                                  **FRAUD**

12                          (Against All Defendants)

13          Plaintiff re-alleges and incorporates by reference all the allegations set forth

14  above.

15          Defendants have misrepresented facts to this Court to further their ulterior

16  motives.    Defendants have known, or should have known, that their representations were

17    false, and that foreclosure on the Subject Property was invalid and illegal, yet

18  Defendants pursued possession of the Subject Property via misrepresentations of facts to

19  this Court to obtain an order for relief from stay.

20          Defendants willfully furthered their wrongs by attempting to enforce an

21  unlawful relief from stay obtained from said wrongful actions concealing the actual facts

22  from this Court.  Defendants' sole ulterior motive was to gain possession of the Subject

23  Property by any means necessary, including the improper use of the courts, an abuse of

24  process.  Defendants performed the acts alleged herein willfully and with full knowledge

25  of their illegality.

26          Because of Defendant's fraud, Plaintiffs has suffered and continue to suffer

27  extreme emotional distress as well as economic damages.  Plaintiff therefore seeks all

28                                    -12-

1  proper remedies with respect to the Defendants' fraud.

2

**THIRD CAUSE OF ACTION**

4  **VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**

5  (Against All Defendants)

6  Plaintiff repeats and re-alleges each and every allegation contained above.

7  Defendants committed unlawful, unfair and/or fraudulent business practices, as

8  defined by California Business & Professions Code § 17200§§, by engaging in unlawful,

9  unfair and fraudulent business practices as alleged herein.

10  As a result of Defendants' misconduct, Plaintiff has suffered various damages

11  and injuries according to proof at trial.

12  Plaintiff seeks injunctive relief enjoining Defendants from engaging in unfair

13  business practices described herein.

14  Plaintiffs further seeks restitution, disgorgement of sums wrongfully obtained,

15  costs of suit, and such other and further relief as the Court may deem just and proper.

16

17  **FOURTH CAUSE OF ACTION**

18  **TO SET ASIDE TRUSTEE'S SALE**

19  (Against Defendant DEUTSCHE BANK)

20  Plaintiff repeats and re-alleges each and every allegation contained above.

21  Defendant DEUTSCHE BANK claims to be the owner, by virtue of a Trustee's

22  Deed Upon Sale, of the Subject Property.

23  On or about June 6, 2005, Metrocities Mortgage LLC dba No Red Tape

24  Mortgage (hereinafter referred to as "Metrocities Mortgage"), made a loan to Plaintiff in

25  the principal amount of One Million Dollars ($1,000,000.00) evidenced by a Promissory

26  Note (hereinafter "Note") and secured by a Deed of Trust (hereinafter "Deed of Trust")

27  encumbering the property. The Deed of Trust listed Mortgage Electronic Registration

28
-13-

1  Systems (MERS) as the beneficiary and nominee for the beneficiary and assigns. The

2  Deed of Trust was recognized in the Official Records, County of San Diego, on June 6,

3  2005, as Document Number 2005-0473187, a true and correct copy of the Deed of Trust,

4  as recorded, is attached hereto and incorporated herein as Exhibit "A".

5         On or about August 17, 2007, Defendant MERS caused to be recorded a Notice

6  of Default and an election to sell in the Official Records of San Diego County, California,

7  alleging that: (a) a breach of the obligation secured by the Deed of Trust had occurred,

8  consisting of Plaintiff's alleged failure to pay certain monthly installments of principal

9  and interest; and (b) that Defendant beneficiary elected to sell, or cause to be sold, the

10  trust property to satisfy that obligation. A true and correct copy of the Notice of Default

11  is attached herein and incorporated hereafter as Exhibit "B".

12         Plaintiff alleges on information and belief that Defendant beneficiary and

13  Defendant trustee published and posted, or caused to be published and posted, at various

14  times and in various places certain notices of their intent to sell the trust property at

15  public to purportedly satisfy the obligation secured by the deed of trust, on grounds of

16  the alleged breach of the obligation and under the power of sale in the deed of trust.

17         The trustee attempted and purported to sell the trust property as noticed,

18  conducted a foreclosure sale, and then executed and delivered or caused to be executed

19  and delivered a Trustee's Deed Upon Sale to Defendant DEUTSCHE BANK. The Deed

20  was recorded in the Official Records of San Diego County, California, on May 24, 2008.

21  A true and correct copy of the Trustee's Deed Upon Sale is attached herein and

22  incorporated hereafter as Exhibit "C".

23         The sale was improperly held and the Trustee's Deed was wrongfully executed,

24  delivered, and recorded in that it was part of the securitization scheme and fraud as set

25  forth above in violation of the terms and conditions of the Promissory Note and Deed of

26  Trust, and in violation of the duties and obligations of Defendants to Plaintiff, and based

27  on forged and fraudulent documents, all to Plaintiff's loss and damage in that Plaintiff

28                                    -14-

1  has been wrongfully deprived of legal title by forfeiture.

2         Plaintiff has no obligation to tender to Defendants because the foreclosure sale

3  and the Deed of Trust Upon Sale are void, not voidable.   Defendants had no legal right

4  to title or authority to foreclose and pursue sale of the Subject Property due to multiple

5  illegal and invalid assignments, as well as securitization that separated the Deed from the

6  underlying Note as part of a fraudulent scheme.  In addition, in the origination of the

7  Subject Loan, the Truth in Lending Act was violated, which specifically provides tender

8  is not required.

9         Therefore, Plaintiff requests that the foreclosure sale is set aside.

10

11                    **FIFTH CAUSE OF ACTION**

12                **TO CANCEL TRUSTEE'S DEED**

13                (Against Defendant DEUTSCHE BANK)

14         Plaintiff re-alleges and incorporates by reference all the allegations set forth

15  above.

16         Defendant DEUTSCHE BANK claims an estate or interest in the Subject

17  Property adverse to that of Plaintiff, but Defendant's claims are without any lawful

18  rights.

19         The claims of Defendant DEUTSCHE BANK are based on the Trustee's Deed

20  purporting to convey the Subject Property to Defendant DEUTSCHE BANK.

21         Although the Trustee's Deed appears valid on its face, it is invalid, void, and of

22  no force or effect regarding Plaintiff's interests in the Subject Property, and DEUTSCHE

23  BANK had at all times mentioned herein actual notice of such.

24         The estate in the Subject Property claimed by Defendant DEUTSCHE BANK is

25  a cloud on Plaintiffs' title in and to the subject real property, tends to depreciate its

26  market value, restricts Plaintiff's full use and enjoyment of the real property, and hinders

27  Plaintiff's right to unrestricted alienation of it.  If the Trustee's Deed is not delivered and

28                                    -15-

1  canceled, there is a reasonable fear that Plaintiff will suffer serious injury.

2  Therefore, Plaintiff requests that this Court cancel the Trustee's Deed Upon

3  Sale.

4

5  **SIXTH CAUSE OF ACTION**

6  **TO QUIET TITLE**

7  (Against DEUTSCHE BANK and All Defendants Claiming an Interest in the Subject

8  Property)

9  Plaintiff re-alleges and incorporates by reference all the allegations set forth

10  above.

11  Plaintiff names as Defendants in this action all persons unknown claiming (a)

12  any legal or equitable right, title, estate, lien, or interest in the Subject Property described

13  in the complaint adverse to Plaintiff's title, or (b) any cloud on Plaintiffs' title to the

14  property. The claims of each unknown Defendant are without any right, and these

15  Defendants have no right, title, estate, lien, or interest in the subject property.

16  Plaintiff desires and is entitled to a judicial declaration quieting title in Plaintiff.

17

18  **SEVENTH CAUSE OF ACTION**

19  **ACCOUNTING**

20  (Against All Defendants)

21  Plaintiff re-alleges and incorporates by reference all the allegations set forth

22  above.

23  Defendants have alleged certain monies due from Plaintiff.  However, Plaintiff

24  alleges that said monies are not due or that the amount alleged by Defendants is

25  incorrect.

26  As Defendants allege money due from Plaintiff, allegedly obtaining interest in

27  the mortgage related to the Subject Property, an accounting is due from Defendants that

28  -16-

must take into account all monies paid on the subject mortgage by any person or entity.

Therefore, Plaintiff requests that this Court order appropriate accounting.

### EIGHT CAUSE OF ACTION

### ABUSE OF PROCESS

(Against All Defendants)

Plaintiff re-alleges and incorporates by reference all the allegations set forth above.

Defendants have used the inherent power of the courts to further their ulterior motives.

Defendants have known, or should have known, that the foreclosure on the Subject Property was invalid and illegal, yet Defendants pursued possession of the Subject Property via the power of the courts by filing an improper Unlawful Detainer action and concealing facts from this Court to obtain an order for relief from stay. Defendants willfully furthered their wrongs by attempting to enforce an unlawful relief from stay obtained from said wrongful actions concealing the actual facts from this Court.

Defendants' sole ulterior motive was to gain possession of the Subject Property by any means necessary, including the improper use of the courts, an abuse of process.

Defendants performed the acts alleged herein willfully and with full knowledge of their illegality.

Because of Defendant's abuse of power, Plaintiff has suffered and continues to suffer extreme emotional distress, as well as economic damages.

Plaintiff therefore seeks all proper remedies with respect to the Defendants' misuse of judicial power.

-17-

# NINTH CAUSE OF ACTION

## VIOLATION OF THE FDCPA, 15 U.S.C. § 1692§

(Against All Defendants Acting As Debt Collectors and Others to Be Alleged By Amendment)

Plaintiff repeats and re-alleges each and every allegation contained above.

Defendants have concealed the roles of the parties and Plaintiff does not know who, other than the named Defendants, are "debt collectors" of the loan. Plaintiff will amend this complaint when the appropriate parties who were debt collectors are discovered.

Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt..." 15 U.S.C. § 1692.

In prosecuting the Unlawful Detainer action against Plaintiff, the debt collector Defendants:

(1)    Made false, deceptive and misleading representation concerning their standing to sue Plaintiff and their interest in the debt, using false and misleading statements to this Court to obtain Relief from Stay;

(2)    Falsely represented the status of the debt, in particular, that it was due and owing from Plaintiff at the time an eviction suit was filed;

(3)    Falsely represented or implied that the debt was owing to Defendant DEUTSCHE BANK as an innocent purchaser for value, when in fact, a valid and legal assignment had not been accomplished;

(4)    Threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings as trustees that cannot legally be taken by them;

-18-

(5)     Obtained access to state courts to attempt to evict Plaintiff, under false pretenses, namely, that Defendants were duly authorized to engage in such activities when in fact they were not;

(6)     In the case of the Law Firm Defendant, this Defendant knew or should have known that their clients did not acquire proper title due to fraudulent transfers and securitization; however, the Law Firm proceeded with eviction proceedings against Plaintiff anyway;

(7)     Defendants did not, and cannot, obtain and/or file an assignment of the Note or mortgage of Plaintiff at this time as it would violate the "Pooling and Service Agreements" used in securitization.

The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, sections 1692c, 1692d, 1692e, 1692f, 1692g, and 1692i.

Plaintiff is entitled and requests to recover equitable relief, statutory damages, actual damages, and costs.

## TENTH CAUSE OF ACTION

**VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT ("Rosenthal Act")**

California Civil Code § 1788§, et seq.

(Against All Defendants and Other Loan Servicers Acting As Debt Collectors To Be Alleged By Amendment)

Plaintiff repeats and re-alleges each and every allegation contained above.

Debt collectors named in this cause of action are subject to the Rosenthal Act.

Defendants have concealed their true roles, and Plaintiff does not know who the other "debt collectors" of the loan are, and Plaintiff will amend this complaint when the appropriate parties who were debt collectors are discovered.

-19-

1    Defendants' actions constitute a violation of California Civil Code

2  § 1788, *et seq.*, also known as the Rosenthal Act, in that they threatened to take actions

3  prohibited by law, including, without limitation: falsely stating the amount of a debt;

4  increasing the amount of a debt by including amounts not permitted by law or contract;

5  improperly foreclosing upon the Subject Property; and using unfair and unconscionable

6  means in an attempt to collect a debt.

7    Defendants' misconduct has caused Plaintiff to suffer actual damages.

8  As a result of Defendants' misconduct, Plaintiff is entitled to actual damages and

9  statutory damages in an amount to be determined at trial.  Moreover, said Defendants'

10  misconduct  was willful, malicious, and outrageous, and therefore punitive damages are

11 warranted and demanded.

12    Pursuant to the controlling contractual document(s) and applicable law, Plaintiff

13  is entitled to recover costs and reasonable attorney fees, if any.

14

15    **WHEREFORE, Plaintiff demands judgment as follows:**

16    1. That the Court issue: (a) a declaration that the sale of the Subject Property is

17  null and void and of no force or effect, and (b) an order setting aside the Trustee's Sale of

18  the Subject Property.

19    2. That the Court: (a) issue an order that defendant DEUTSCHE BANK deliver

20  the Trustee's Deed to the Court, and (b) cancel the Trustee's Deed.

21    3. That the Court order judgment quieting title in Plaintiff as owner of the

22  Subject Property, declaring that Defendant DEUTSCHE BANK has no right, title, estate,

23  lien, or interest in the Subject Property adverse to Plaintiff's.

24    4. That the Court render between Plaintiff, and all Defendants, an accounting

25  determining the amount, if any, actually owed to Defendants by Plaintiff, or by

26  Defendants to Plaintiff.

27    5. As against Defendants and for Plaintiffs, that the Court award an appropriate

28                                          -20-

amount and relief in under the FDCPA cause of action;

      6. That the Court award Plaintiff all costs and attorney fees, if any, in this action, and that the Court award any other appropriate relief;

      7. Declaratory judgment that the Law Firm's conduct violated the FDCPA, the Rosenthal Act, and that all Defendants violated B&P Code 17200, and an injunction prohibiting such acts in the future;

      8. An award of compensatory damages in an amount deemed appropriate by the trier of facts, and/or appropriate equitable relief;

      9. An award of pre-judgment and post-judgment interest;

      10. Enjoin Defendants, their successors in office, agents, employees, and all other persons in active concert and participation with them from continuing their practice of pursuing improper eviction actions;

      11. Any other further legal and/or equitable relief to which Plaintiff might be entitled or which the Court deems proper, including, according to proof, exemplary or punitive damages as may be necessary and appropriate to punish and deter any reprehensible or intentional misconduct.

Dated: November 18, 2011        LEONARDO OROZCO, PRO SE

-21-

# EXHIBIT A

DOC # 2005-0473187



JUN 06, 2005      3:53 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:          69.00
PAGES:         21        DA:     1

**Recording Requested by**
**FINANCIAL TITLE COMPANY**

WHEN RECORDED RETURN TO:
METROCITIES MORTGAGE, LLC
ATTN: DOCUMENT CONTROL
15301 VENTURA BLVD. SUITE D300
SHERMAN OAKS, CALIFORNIA 91403

2005-0473187

MERS MIN NO. 1000342000024600314071

142139-381
207-083-12

[Space Above This Line For Recording Data]

## DEED OF TRUST

LOAN NO. 16013692

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated **MAY 26, 2005**                    , together with all Riders to this document.
**(B)** "**Borrower**" is
  **LEONARDO OROZCO , AN UNMARRIED MAN**

Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is
**METROCITIES MORTGAGE LLC DBA NO RED TAPE MORTGAGE**
Lender is a **LIMITED LIABILITY COMPANY**
organized and existing under the laws of      **DELAWARE**
Lender's address is      **15301 VENTURA BLVD. SUITE D300, SHERMAN OAKS, CA 91403**
Lender is the beneficiary under this Security Instrument.
**(D)** "**Trustee**" is **FIDELITY NATIONAL LOAN PORTFOLIO SOLUTIONS, A CALIFORNIA CORPORATION**
**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888)679-MERS.
**(F)** "**Note**" means the promissory note signed by Borrower and dated **MAY 26, 2005**
The Note states that Borrower owes Lender
**ONE MILLION AND 00/100**
 Dollars.   (U.S. $ **1,000,000.00**              ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JUNE 1, 2035**                     .
**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [x] Other(s) [specify] | [ ] 1-4 Family Rider | [x] Prepayment Penalty Rider |

**LEGAL DESCRIPTION ATTACHED**
**ADDENDUM TO ADJUSTABLE RATE RIDER, INTEREST ONLY RIDER**

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM ISTRUMENT
MERSDEED                              Page 1 of 11                         Form 3005 1/01

**14072**

Loan No.16013692

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of

**SAN DIEGO**                                                         [Type of Recording Jurisdiction]
    [Name of Recording Jurisdiction]

## LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of **4260 SKYLINE ROAD**
                                                                [Street]

**CARLSBAD**                                    , California    **92008**
            [City]                                                    [Zip Code] [Property Address]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM ISTRUMENT                    Form 3005 1/01
MERSDEED                                    Page 2 of 11

**14073**

Loan No. 16013692

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

**14074**

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**14075**

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**14076**

Loan No. 16013692

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**14077**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

14078                    Loan Number 1601963

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM ISTRUMENT
MERSDEED                    Page 8 of 11                    Form 3005 1/01

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**14080**

Loan Number 16013692

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

14081

Loan Number 16013692

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ 5-26-05 (Seal)                    _____ (Seal)
LEONARDO OROZCO                        Borrower                                                Borrower

_____ (Seal)                    _____ (Seal)
                        Borrower                                                Borrower

_____ (Seal)                    _____ (Seal)
                        Borrower                                                Borrower

_____ (Seal)                    _____ (Seal)
                        Borrower                                                Borrower

[Space Below This Line Reserved For Acknowledgement]

STATE OF ____CALIFORNIA____ )
                                    ) SS
COUNTY OF ___San Diego___ )

On __5/26/__, 20 __05__, before me, __Ryan S. Krason, Notary Public__
            Date    Year                          Name, Title of Officer

personally appeared __Leonard Orozco__
                              NAME(S) OF SIGNER(S)

☐ personally known to me          -OR-          ☒ proved to me on the basis of satisfactory
                                                evidence to be the person(s) whose name(s)
                                                is/are subscribed to the within instrument and
                                                acknowledged to me that he/she/they executed
                                                the same in his/her/their authorized capacity(ies),
                                                and that by his/her/their signature(s) on the
RYAN S. KRASON                                  instrument the person(s), or the entity upon
COMM. #1505541                                  behalf of which the person(s) acted, executed the
NOTARY PUBLIC-CALIFORNIA                         instrument.
SAN DIEGO COUNTY
My Comm. Expires August 3, 2008

WITNESS my hand and official seal

_____
Signature of Notary

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM ISTRUMENT          Form 3005 1/01
MERSDEED                          Page 11 of 11



**14082**

Page No. 2
Order No. **00142139-AC3**

EXHIBIT "A"

**LEGAL DESCRIPTION**

**The land referred to in this Report is described as follows:**

All that certain real property situated in the County of SAN DIEGO, State of California, described as follows:

PARCEL 1:

THAT PORTION OF LOT 46 OF CARLSBAD HIGHLANDS NO. 2 IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 2825, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, DECEMBER 5, 1951, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWESTERLY CORNER OF SAID LOT 46; THENCE SOUTH 32°41'20" EAST 83.50 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 205.00 FEET; THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 4°20'05" A DISTANCE OF 15.51 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 15°56'20" A DISTANCE OF 57.03 FEET TO THE SOUTHERLY LINE OF SAID LOT 46; THENCE NORTH 86°56'20" WEST ALONG SAID SOUTHERLY LINE 100.59 FEET TO THE SOUTHWESTERLY CORNER OF SAID LOT; THENCE NORTH 3°03'40" EAST ALONG THE WESTERLY LINE OF SAID LOT A DISTANCE OF 38.00 FEET TO AN INTERSECTION WITH A LINE THAT BEARS NORTH 86°56'20" WEST FROM THE TRUE POINT OF BEGINNING; THENCE SOUTH 86°56'20" EAST 58.31 FEET OF THE TRUE POINT OF BEGINNING.

PARCEL 2:

ALL OF LOT 47 OF CARLSBAD HIGHLANDS NO. 2 IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 2825, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

EXCEPTING THEREFROM THAT PORTION INCLUDED WITHIN THE FOLLOWING DESCRIBED PARCEL:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID LOT 46 AS SHOWN ON SAID MAP NO. 2825; THENCE SOUTH 32°41'20" EAST 83.50 FEET TO A TANGENT 205 FOOT RADIUS CURVE CONCAVE NORTH EASTERLY; THENCE SOUTHEASTERLY ALONG SAID CURVE 72.54 FEET THROUGH AN ANGLE OF 20°16'25" TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 46, SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTHEASTERLY ALONG SID CURVE 71.86 FEET THROUGH AN ANGLE OF 20°03'05" TO A POINT OF COMPOUND CURVATURE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 280 FEET; THENCE

14083

Page No. 3
Order No. 00142139-AC3

SOUTHEASTERLY ALONG SAID CURVE 7.47 FEET THROUGH AN ANGLE OF 1°31'45" TO THE EASTERLY LINE OF SAID LOT 47; THENCE NORTH 2°56'50" EAST ALONG THE EASTERLY LINE OF SAID LOTS, A DISTANCE OF 87.78 FEET TO A POINT DISTANT THEREON NORTH 2°56'50" EAST 56.96 FEET FROM THE SOUTHEASTERLY CORNER OF SAID LOT 46; THENCE SOUTH 43°32'52" WEST 78.39 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 46, DISTANT THEREON SOUTH 86°56'20" EAST 118.98 FEET FROM THE SOUTHWESTERLY CORNER OF SAID LOT 46; THENCE NORTH 86°56'20" WEST ALONG SAID SOUTHERLY LINE 18.39 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

APN: 207-083-12

14084

Loan Number: 16013692

# PREPAYMENT RIDER
(Multi-State)

This Prepayment Rider is made this  26th  day of MAY, 2005              and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to METROCITIES MORTGAGE LLC DBA NO RED TAPE MORTGAGE, A LIMITED LIABILITY COMPANY            (the "Lender") of the same date and covering the property described in the Security Instrument and located at
4260 SKYLINE ROAD, CARLSBAD, CALIFORNIA 92008
(the "Property").

Additional Covenants.  Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  A "full prepayment" is the prepayment of the entire unpaid principal due under the Note.  A payment of only part of the unpaid principal is known as a "partial prepayment."

If, within the   36  month(s) period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment.  The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation.  No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first   6     month(s) of the term of the Note, no prepayment penalty will be assessed.  In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ 5-26-05 (Seal)
LEONARDO OROZCO          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

PREPAYMENT RIDER - 603B2 Multi-State
11/15/99

DocMagic *eFormms* 800-649-1362
www.docmagic.com

Us603b2.als

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge.  Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand.

All other provisions of the Note are unchanged and remain in full force and effect.

## NOTICE TO BORROWER

Do not sign this Addendum before you read it.  This Addendum provides for the payment of a Prepayment charge if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____ 5-26-05 _____ (Seal)          _____ (Seal)
LEONARDO  OROZCO                              -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                                    -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                                    -Borrower                                                          -Borrower

14086

Loan Number: 16013692

# PREPAYMENT RIDER
### (Multi-State)

This Prepayment Rider is made this  26th  day of MAY, 2005                    and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note (the "Note") to METROCITIES MORTGAGE LLC DBA NO RED TAPE
MORTGAGE, A LIMITED LIABILITY COMPANY               (the "Lender") of the same
date and covering the property described in the Security Instrument and located at
4260 SKYLINE ROAD, CARLSBAD, CALIFORNIA 92008
                                                                    (the "Property").

Additional Covenants.  Notwithstanding anything to the contrary set forth in the Note or Security
Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due.  A
payment of principal only is known as a "prepayment."  A "full prepayment" is the prepayment of the
entire unpaid principal due under the Note.  A payment of only part of the unpaid principal is known
as a "partial prepayment."

If, within the   36  month(s) period beginning with the date Borrower executes the Note
(the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve
(12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a
prepayment charge as consideration for the Note Holder's acceptance of such prepayment.  The
prepayment charge will equal the amount of interest that would accrue during a six (6)-month
period on the amount prepaid that exceeds 20% of the original principal balance of the Note,
calculated at the rate of interest in effect under the terms of the Note at the time of the
prepayment, unless otherwise prohibited by applicable law or regulation.  No prepayment charge
will be assessed for any prepayment occurring after the Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide
sale of the Property to an unrelated third party after the first  6      month(s) of the term of the
Note, no prepayment penalty will be assessed.  In that event, Borrower agrees to provide the Note
Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this
Prepayment Rider.

_____ (Seal)      5-26-05      _____ (Seal)
LEONARDO OROZCO            -Borrower                                          -Borrower

_____ (Seal)                   _____ (Seal)
                           -Borrower                                          -Borrower

_____ (Seal)                   _____ (Seal)
                           -Borrower                                          -Borrower

DocMagic *EFerms* 800-649-1362
www.docmagic.com

MERS MIN  100034200002460032    LOAN NO. 160~~43692~~

*14087*

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **26TH** day of **MAY, 2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **METROCITIES MORTGAGE LLC DBA NO RED TAPE MORTGAGE** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**4260 SKYLINE ROAD**
**CARLSBAD, CA 92008**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **6.000** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the **1ST** day of **JUNE 1, 2015**, and on that day every **6** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE AND ONE QUARTER** percentage points ( **3.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)
Single Family--Fannie Mae MODIFIED INSTRUMENT
FORM 3138 1/01    PAGE 1 OF 3

**14088**

LOAN NO. 16013692

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.000** % or less than **3.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO AND 00/100** percentage points ( **2.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **12.000** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.     TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)
Single Family --Fannie Mae MODIFIED INSTRUMENT
FORM 3138 1/01                                    Page 2 of 3

14089

LOAN NO. 16013692

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

| _____ 5-26-05 | _____ |
|---|---|
| Borrower                    Date | Borrower                    Date |
| LEONARDO OROZCO | |

| _____ | _____ |
|---|---|
| Borrower                    Date | Borrower                    Date |

| _____ | _____ |
|---|---|
| Borrower                    Date | Borrower                    Date |

| _____ | _____ |
|---|---|
| Borrower                    Date | Borrower                    Date |

**14090**

LOAN NO. 16013692

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made **MAY 26, 2005** and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**4260 SKYLINE ROAD
CARLSBAD, CA 92008**

## AMENDED PROVISIONS
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **12.000** % or less than **3.250**%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO AND 00/100** percentage point(s) (**2.000** %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **12.000** %. My interest rate will never be less than **3.250** %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

Witness

| | | | |
|---|---|---|---|
| Borrower Signature **LEONARDO OROZCO** | 5-26-05 Date | Borrower Signature | Date |
| Borrower Signature | Date | Borrower Signature | Date |
| Borrower Signature | Date | Borrower Signature | Date |
| Borrower Signature | Date | Borrower Signature | Date |

1202 LIBOR Addendum to Rider
1/01



MERS MIN 100034200002460032

**14091**

LOAN NO. 16013692

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

**PROPERTY ADDRESS:**
**4260 SKYLINE ROAD**
**CARLSBAD, CA 92008**

THIS ADDENDUM is made this **26TH**    day of    **MAY, 2005**                    , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to
**METROCITIES MORTGAGE LLC DBA NO RED TAPE MORTGAGE**
(the Lender).

   **THIS ADDENDUM** supersedes Sections 4(C) of the Rider. None of the other provisions of the Note are changed by the Addendum.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

   **(C) Calculation of Changes**
      Before each Change Date, the Note Holder will calculate my new interest rate by adding
**THREE AND ONE QUARTER**                              percentage point(s) (   **3.250**        %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.
      During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for the subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the reamining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

_____  5-26-05
Borrower                          Date          Borrower                          Date
**LEONARDO OROZCO**


_____               _____
Borrower                          Date          Borrower                          Date


_____               _____
Borrower                          Date          Borrower                          Date


_____               _____
Borrower                          Date          Borrower                          Date

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 603F 1-01

# EXHIBIT B

Recording requested by:
**LANDAMERICA DEFAULT SERVICES**

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

*THIS COPY OF "NOTICE," THE ORIGINAL OF WHICH WAS FILED FOR RECORD ON 07/25/2007 IN THE OFFICE OF THE RECORDER OF SAN DIEGO, CALIFORNIA IS SENT TO YOU IN AS MUCH AS AN EXAMINATION OF THE TITLE TO SAID TRUST PROPERTY SHOWS YOU MAY HAVE AN INTEREST IN THE TRUSTEE'S SALES PROCEEDINGS.*

Space above this line for Recorder's use only

Trustee Sale No. : 20070161903534          Title Order No.: 30077718

IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$26,958.84** as of 7/24/2007 and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

FCUS_NoticeOfDefault.rpt-Mail - 03/29/2007 - Ver-19

Page 1 of 2

EX-114

**IMPORTANT NOTICE**
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 20070161903534          Title Order No.: 30077718

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**CHASE HOME FINANCE, LLC, SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION**
c/o NDEx West, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN THAT:** NDEx West, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 05/26/2005, executed by LEONARDO OROZCO AN UNMARRIED MAN, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), as Beneficiary Recorded on 06/06/2005 as Instrument No. 2005-0473187 of official records in the Office of the Recorder of SAN DIEGO County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $1,000,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 4/1/2007 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 7/24/2007

NDEx West, LLC as Agent for Beneficiary
By: LANDAMERICA DEFAULT SERVICES, authorized agent

By: <u>ORIGINAL DOCUMENT SIGNED BY AUTHORIZED AGENT</u>

Page 2 of 2

FCUS_NoticeOfDefault.rpt-Mail - 03/29/2007 - Ver-19

# EXHIBIT C

Recording Requested by:
LandAmerica Default Title
Services

Recording requested by:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

When Recorded Mail to and Mail Tax Statement to:
DEUTSCHE BANK NATIONAL TRUST .et al
c/o CHASE HOME FINANCE, LLC, SUCCE .et al
10790 RANCHO BERNARDO ROAD
SAN DIEGO, CA 92127

2090

TDUS20070161903534

**DOC #    2008-0300162**

JUN 04, 2008    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:      25.00
OC:        NA

PAGES:    3

Space above this line for Recorder's use only

Trustee Sale No. : 20070161903534        Title Order No.: 30077718

## TRUSTEE'S DEED UPON SALE

The undersigned grantor declares:
1)  The Grantee herein WAS the foreclosing beneficiary
2)  The amount of the unpaid debt together with cost was        $1,088,222.52
3)  The amount paid by the grantee at the trustee sale was      $796,000.00
4)  The documentary transfer tax is N/A
5)  Said property is in the city of  CARLSBAD
6)  APN# 207-083-12-00

NDEX West, L.L.C. , as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to:

**DEUTSCHE BANK NATIONAL TRUST COMPANY**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of  SAN DIEGO, State of California, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated  05/26/2005 and executed by  LEONARDO OROZCO AN UNMARRIED MAN  Trustor(s),  and  Recorded on 06/06/2005 as Instrument No. 2005-0473187 of official records of SAN DIEGO County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on 05/16/2008. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being $796,000.00 in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the Time of said Trustee's Sale.

071

Trustee Sale No. : 20070161903534      Title Order No.: 30077718

2091

DATED: 06/02/2008

NDEx West, L.L.C., as Trustee

_____  Authorized Agent        JUN 0 2 2008
Matthew Kloster                                        DATED

State of      TEXAS    }
County of    DALLAS   }

On JUN 0 2 2008 ___ before me, _____ Randy Middleton _____ Notary Public, personally appeared
_____ Matthew Kloster _____ personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _____

RANDY MIDDLETON
Notary Public
State of Texas
My Comm. Exp. 05-25-2011

FCUS_TrusteeDeedUponSale.rpt- (02/07/08) / Ver-14

072

3

Trustee Sale No. : 20070161903534        Title Order No.: 30077718

**EXHIBIT "A"**

2092

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL 1:

THAT PORTION OF LOT 46 OF CARLSBAD HIGHLANDS NO.2 IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 2825, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, DECEMBER 5, 1951, DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHWESTERLY CORNER OF SAID LOT 46; THENCE SOUTH 32° 41' 20" EAST 83.50 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 205.00 FEET; THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 4° 20' 05" A DISTANCE OF 15.51 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 15° 56' 20" A DISTANCE OF 57.03 FEET TO THE SOUTHERLY LINE OF SAID LOT 46; THENCE NORTH 86° 56' 20"  WEST ALONG SAID SOUTHERLY LINE 100.59 FEET TO THE SOUTHWESTERLY CORNER OF SAID LOT; THENCE NORTH 3° 03' 40" EAST ALONG THE WESTERLY LINE OF SAID LOT A DISTANCE OF 38.00 FEET TO AN INTERSECTION WITH A LINE THAT BEARS NORTH 86° 56' 20" WEST FROM THE TRUE POINT OF BEGINNING; THENCE SOUTH 86° 56' 20" EAST 58.31 FEET OF THE TRUE POINT OF BEGINNING.

PARCEL 2:

ALL OF LOT 47 OF CARLSBAD HIGHLANDS NO.2 IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 2825, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

EXCEPTING THEREFROM THAT PORTION INCLUDED WITHIN THE FOLLOWING DESCRIBED PARCEL :

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID LOT 46 AS SHOWN ON SAID MAP NO. 2825; THENCE SOUTH 32° 41' 20" EAST 83.50 FEET TO A TANGENT 205 FOOT RADIUS CURVE CONCAVE NORTH EASTERLY; THENCE SOUTHEASTERLY ALONG SAID CURVE 72.54 FEET THROUGH AN ANGLE OF 20° 16' 25" TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 46, SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTHEASTERLY ALONG SAID CURVE 71.86 FEET THROUGH AN ANGLE OF 20° 03' 05" TO A POINT OF COMPOUND CURVATURE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 280 FEET; THENCE SOUTHEASTERLY ALONG SAID CURVE 7.47 FEET THROUGH AN ANGLE OF 1° 31' 45" TO THE EASTERLY LINE OF SAID LOT 47; THENCE NORTH 2° 56' 50" EAST ALONG THE EASTERLY LINE OF SAID LOTS, A DISTANCE OF 87.78 FEET TO A POINT DISTANT THEREON NORTH 2° 56' 50" EAST 56.96 FEET FROM THE SOUTHEASTERLY CORNER OF SAID LOT 46; THENCE SOUTH 43° 32' 52" WEST 78.39 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 46, DISTANT THEREON SOUTH 86° 56' 20" EAST 118.98 FEET FROM THE SOUTHWESTERLY CORNER OF SAID LOT 46; THENCE NORTH 86° 56' 20" WEST ALONG SAID SOUTHERLY LINE 18.39 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

APN: 207-083-12-00

FCUS_TrusteeDeedUponSale.rpt- (02/07/08) / Ver-14

073

# EXHIBIT D

CSD 1160 [05/15/03]
Name, Address, Telephone No. & I.D. No.

Anne L. Warner                           CA SBN 254327            E-Filed on March 27, 2008
Pite Duncan, LLP
525 E. Main Street
P.O. Box 12289
El Cajon, CA 92022-2289
Telephone: (619) 590-1300
Facsimile: (619) 590-1385

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| In Re | | |
|---|---|---|
| Leonardo Orozco, | | |
| | Debtor. | BANKRUPTCY NO. 07-06985-JM7 |
| Deutsche Bank National Trust Company, | | RS NO.    PD-1 |
| its successors and/or assigns | Moving Party | |
| Leonardo Orozco, | Debtor; | |
| Richard M. Kipperman, | Chapter 7 Trustee | et al. |
| | | Respondent(s) |

AMENDED **MOTION FOR RELIEF FROM AUTOMATIC STAY**
☑ **REAL PROPERTY**      ☐ **PERSONAL PROPERTY**

Movant in the above-captioned matter moves this Court for an Order granting relief from the automatic stay on the grounds set forth below.

1.    A Petition under Chapter  ☑ 7  ☐ 11  ☐ 12  ☐ 13  was filed on  December 3, 2007 .
      Case converted to one of Chapter 7 on or about February 14, 2008.
2.    Procedural Status:
      a.    ☑  Name of Trustee Appointed (if any):        Richard M. Kipperman

      b.    ☐  Name of Attorney of Record for Trustee (if any):

      c.    ☐  (Optional) Prior Filing Information:
             Debtor has previously filed a Bankruptcy Petition on:_____.
             If applicable, the prior case was dismissed on: _____.

      d.    ☐  (If Chapter 13 case): Chapter 13 Plan was confirmed on _____ or a confirmation hearing is
             set for _____.

Movant alleges the following in support of its Motion:

1.    ☑  The following real property is the subject of this Motion:
      a.    Street address of the property including county and state:

             4260 Skyline Road, Carlsbad, California 92008

                          San Diego County

      b.    Type of real property (e.g., single family residence, apartment building, commercial, industrial, condominium,
             unimproved):

             Single Family Residence

      c.    Legal description of property is attached as Exhibit A.

CSD 1160

CSD 1160 (Page 2) [05/15/03]

    d.    If a chapter 11 or 13 case and if non-payment of any post-petition payment is a ground for relief, attach the accounting required by Local Bankruptcy Rule 4001-2(a)(4) as Exhibit B.

    e.    *Fair market value of property as set forth in the Debtor's schedules: $   800,000.00

    f.    *Nature of Debtor's interest in the property:
        Owner

2.    ☐    The following personal property is the subject of this Motion *(describe property)*:

    a.    Fair market value of property as set forth in the Debtor's schedules: $

    b.    Nature of Debtor's interest in the property:

3.    *Fair market value of property according to Movant: $  800,000.00

4.    *Nature of Movant's interest in the property:   Beneficiary under the first deed of trust.

5.    *Status of Movant's loan:
    a.    Balance owing on date of Order for Relief:    $   1,056,166.78
    b.    Amount of monthly payment:    $   5,762.08
    c.    Date of last payment:
    d.    If real property,
        i.    Date of default:    4/1/2007
        ii.    Notice of Default recorded on:
        iii.    Notice of Sale published on:
        iv.    Foreclosure sale currently scheduled for:
    e.    If personal property,
        i.    Pre-petition default:    $    No. of months:
        ii.    Post-petition default:    $    No. of months:

6.    *(If Chapter 13 Case, state the following:)*
    a.    Date of post-petition default:
    b.    Amount of post-petition default:    $

7.    Encumbrances:
    a.    Voluntary encumbrances on the property listed in the Schedules or otherwise known to Movant:

| Lender Name | Principal Balance | (IF KNOWN) Pre-Petition Arrearages Total Amount - # of Months | | Post-Petition Arrearages Total Amount - # of Months | |
|---|---|---|---|---|---|
| 1st: Mortgage Electronic Registration Systems | 1,000,000.00 | 56,240.08 | 9 | 10,762.08 | 2 |
| 2nd: Countrywide Home | 327,548.36 | | | | |
| 3rd: | | | | | |
| 4th: | | | | | |
| Totals for all Liens: | $   1,327,548.36 | $   56,240.08 | | $   10,762.08 | |

    b.    Involuntary encumbrances of record (e.g., tax, mechanic's, judgment and other liens, lis pendens) as listed in schedules or otherwise known to Movant:
        ☐    See attached page, if necessary.

*Separately filed Declaration required by Local Bankruptcy Rule 4001-2(a)(5).
CSD 1160

CSD 1160 (Page 3) [05/15/03]

8.    Relief from the automatic stay should be granted because:

    a.    ☑    Movant's interest in the property described above is not adequately protected.

    b.    ☑    Debtor has no equity in the ☑ real property ☐ personal property described above and such property is not necessary to an effective reorganization.

    c.    ☐    The property is "single asset real estate", as defined in 11 U.S.C. § 101(51B), and 90 days (or _____ days as ordered by this court) have passed since entry of the order for relief in this case, and

        i.    the Debtor/Trustee has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; and

        ii.    the Debtor/Trustee has

            (1)    ☐    not commenced monthly payments to each creditor whose claim is secured by the property (other than a claim secured by a judgment lien or by an unmatured statutory lien), or

            (2)    ☐    commenced payments, but such payments are less than an amount equal to interest at a current fair market rate on the value of each creditors' interest in the property.

    d.    ☑    *Other cause exists as follows *(specify)*: ☐ See attached page.

    Debtor has failed to make post-petition payments as they come due.

When required, Movant has filed separate Declarations pursuant to Local Bankruptcy Rule 4001-2(a)(5) and (6).

Movant attaches the following:

1.    ☐    Other relevant evidence:

2.    ☐    *(Optional)* Memorandum of points and authorities upon which the moving party will rely.

    WHEREFORE, Movant prays that this Court issue an Order granting the following:

☑    Relief as requested.

☑    Other:

    That the 10-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

Dated:    March 27, 2008

                /s/    Anne L. Warner (CA SBN 254327) _____
                [Attorney for] Movant

*Separately filed Declaration required by Local Bankruptcy Rule 4001-2(a)(5).
CSD 1160

14082

Page No. 2
Order No. 00142139-AC3

## EXHIBIT "A"

## LEGAL DESCRIPTION

**The land referred to in this Report is described as follows:**

All that certain real property situated in the County of SAN DIEGO, State of California, described as follows:

PARCEL 1:

THAT PORTION OF LOT 46 OF CARLSBAD HIGHLANDS NO. 2 IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 2825, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, DECEMBER 5, 1951, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWESTERLY CORNER OF SAID LOT 46; THENCE SOUTH 32°41'20" EAST 83.50 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 205.00 FEET; THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 4°20'05" A DISTANCE OF 15.51 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 15°56'20" A DISTANCE OF 57.03 FEET TO THE SOUTHERLY LINE OF SAID LOT 46; THENCE NORTH 86°56'20" WEST ALONG SAID SOUTHERLY LINE 100.59 FEET TO THE SOUTHWESTERLY CORNER OF SAID LOT; THENCE NORTH 3°03'40" EAST ALONG THE WESTERLY LINE OF SAID LOT A DISTANCE OF 38.00 FEET TO AN INTERSECTION WITH A LINE THAT BEARS NORTH 86°56'20" WEST FROM THE TRUE POINT OF BEGINNING; THENCE SOUTH 86°56'20" EAST 58.31 FEET OF THE TRUE POINT OF BEGINNING.

PARCEL 2:

ALL OF LOT 47 OF CARLSBAD HIGHLANDS NO. 2 IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 2825, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

EXCEPTING THEREFROM THAT PORTION INCLUDED WITHIN THE FOLLOWING DESCRIBED PARCEL:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID LOT 46 AS SHOWN ON SAID MAP NO. 2825; THENCE SOUTH 32°41'20" EAST 83.50 FEET TO A TANGENT 205 FOOT RADIUS CURVE CONCAVE NORTH EASTERLY; THENCE SOUTHEASTERLY ALONG SAID CURVE 72.54 FEET THROUGH AN ANGLE OF 20°16'25" TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 46, SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTHEASTERLY ALONG SID CURVE 71.86 FEET THROUGH AN ANGLE OF 20°03'05" TO A POINT OF COMPOUND CURVATURE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 280 FEET; THENCE



EXHIBIT A

14083

Page No. 3
Order No. 00142139-AC3

SOUTHEASTERLY ALONG SAID CURVE 7.47 FEET THROUGH AN ANGLE OF 1°31'45" TO THE
EASTERLY LINE OF SAID LOT 47; THENCE NORTH 2°56'50" EAST ALONG THE EASTERLY LINE
OF SAID LOTS, A DISTANCE OF 87.78 FEET TO A POINT DISTANT THEREON NORTH 2°56'50"
EAST 56.96 FEET FROM THE SOUTHEASTERLY CORNER OF SAID LOT 46; THENCE SOUTH
43°32'52" WEST 78.39 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 46, DISTANT
THEREON SOUTH 86°56'20" EAST 118.98 FEET FROM THE SOUTHWESTERLY CORNER OF SAID
LOT 46; THENCE NORTH 86°56'20" WEST ALONG SAID SOUTHERLY LINE 18.39 FEET, MORE OR
LESS, TO THE TRUE POINT OF BEGINNING.


APN: 207-083-12

# EXHIBIT E

CSD 1162 [08/22/03]

Name, Address, Telephone No. & I.D. No.

Anne L. Warner                                    CA SBN 254327
PITE DUNCAN, LLP
525 EAST MAIN STREET
P.O. BOX 12289
EL CAJON, CA 92022-2289
TELEPHONE: (619) 590-1300
FACSIMILE: (619) 590-1385

Order Entered on
April 17, 2008
by Clerk U.S. Bankruptcy Court
Southern District of California

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re
Leonardo Orozco,

                                        Debtor.

BANKRUPTCY NO. 07-06985-JM7

Deutsche Bank National Trust Company, its successors
and/or assigns.

                                        Moving Party

RS NO.        PD-1

Leonardo Orozco, Debtor;
Richard M. Kipperman,     Chapter 7 Trustee     et al.

                                        Respondent(s)

## ORDER ON NONCONTESTED MOTION FOR RELIEF FROM AUTOMATIC STAY
☑  REAL PROPERTY    ☐  PERSONAL PROPERTY

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __4__ pages, is granted.  Motion Docket Entry No. _____70_____

//

//

//

//

DATED:  April 16, 2008

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

PITE DUNCAN, LLP
(Firm name)

By: /s/   Anne L. Warner (CA SBN 254327)
      Attorney for Movant

CSD 1162

CSD 1162 [08/22/03] (Page 2)   Case 07-06985-JM7   Filed 04/16/08   Doc 77   Pg. 4

ORDER ON NON-CONTESTED MOTION FOR RELIEF FROM AUTOMATIC STAY ON REAL OR PERSONAL PROPERTY

DEBTOR: Leonardo Orozco,
CASE NO: 07-06985-JM7
RS NO.: PD-1

The Motion of _____ Deutsche Bank National Trust Company, its successors and/or assigns _____,

("Movant"), for relief from the automatic stay having been filed with the above-entitled court on _____ March 27, 2008 _____, and

The Notice of Filing of a Motion for Relief from Automatic Stay (a file-stamped copy of which is attached hereto as Exhibit A

OR Notice Docket Entry No. _____ 71 _____, if filed electronically), the Motion, and accompanying Declarations having been served

upon the parties named below on _____ March 27, 2008 _____, and

☑  Debtor (Name):          Leonardo Orozco,

☑  Debtor's Attorney (Name):   David W. Wiese

☑  Trustee (Name):         Richard M. Kipperman

☑  United States Trustee (in Chapter 11 & 12 cases), and

☑  Others, if any (Name):  Lienholders
        Countrywide Home Loans

No objection or Request for Hearing having been filed by or on behalf of the Debtor, IT IS HEREBY ORDERED as follows:

The automatic stay pursuant to 11 U.S.C. Section 362 is hereby terminated for all purposes as to Movant in connection with

the estate's and the debtor's interest in

1.   ☑   The following real property:

   a.   Street address of the property including county and state:

        4260 Skyline Road, Carlsbad, California  92008

   b.   Legal description is ☐ attached as Exhibit B or ☑ described below:
        SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT A AND MADE A PART HEREOF

2.   ☐   The following personal property as described ☐ below or ☐ in Exhibit B attached:

        IT IS FURTHER ORDERED that (Optional):

_ The 10 day stay provided by Bankruptcy Rule 4001 (a)(3) is waived; This Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of United States Code; Movant may offer and provide Debtor with information regarding a potential Forbearance Agreement, Loan Modification, Refinance Agreement, or other Loan Workout/Loss Mitigation Agreement, and may enter into such agreement with Debtor. However, Movant may not enforce, or threaten to enforce, any personal liability against Debtor if Debtor's personal liability is discharged in this bankruptcy case; This Order shall be binding as to Deutsche Bank National Trust Company, its successors and/or assigns.

CSD 1162

*Signed by Judge James W. Meyers April 16, 2008*

14082

Page No. 2
Order No. 00142139-AC3

EXHIBIT "A"

LEGAL DESCRIPTION

The land referred to in this Report is described as follows:

All that certain real property situated in the County of SAN DIEGO, State of California, described as follows:

PARCEL 1:

THAT PORTION OF LOT 46 OF CARLSBAD HIGHLANDS NO. 2 IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 2825, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, DECEMBER 5, 1951, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWESTERLY CORNER OF SAID LOT 46; THENCE SOUTH 32°41'20" EAST 83.50 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 205.00 FEET; THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 4°20'05" A DISTANCE OF 15.51 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 15°56'20" A DISTANCE OF 57.03 FEET TO THE SOUTHERLY LINE OF SAID LOT 46; THENCE NORTH 86°56'20" WEST ALONG SAID SOUTHERLY LINE 100.59 FEET TO THE SOUTHWESTERLY CORNER OF SAID LOT; THENCE NORTH 3°03'40" EAST ALONG THE WESTERLY LINE OF SAID LOT A DISTANCE OF 38.00 FEET TO AN INTERSECTION WITH A LINE THAT BEARS NORTH 86°56'20" WEST FROM THE TRUE POINT OF BEGINNING; THENCE SOUTH 86°56'20" EAST 58.31 FEET OF THE TRUE POINT OF BEGINNING.

PARCEL 2:

ALL OF LOT 47 OF CARLSBAD HIGHLANDS NO. 2 IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 2825, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY.

EXCEPTING THEREFROM THAT PORTION INCLUDED WITHIN THE FOLLOWING DESCRIBED PARCEL:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID LOT 46 AS SHOWN ON SAID MAP NO. 2825; THENCE SOUTH 32°41'20" EAST 83.50 FEET TO A TANGENT 205 FOOT RADIUS CURVE CONCAVE NORTH EASTERLY; THENCE SOUTHEASTERLY ALONG SAID CURVE 72.54 FEET THROUGH AN ANGLE OF 20°16'25" TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 46, SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTHEASTERLY ALONG SID CURVE 71.86 FEET THROUGH AN ANGLE OF 20°03'05" TO A POINT OF COMPOUND CURVATURE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 280 FEET; THENCE

EXHIBIT 

Signed by Judge James W. Meyers April 16, 2008

Page No. 3
Order No. 00142139-AC3

SOUTHEASTERLY ALONG SAID CURVE 7.47 FEET THROUGH AN ANGLE OF 1°31'45" TO THE EASTERLY LINE OF SAID LOT 47; THENCE NORTH 2°56'50" EAST ALONG THE EASTERLY LINE OF SAID LOTS, A DISTANCE OF 87.78 FEET TO A POINT DISTANT THEREON NORTH 2°56'50" EAST 56.96 FEET FROM THE SOUTHEASTERLY CORNER OF SAID LOT 46; THENCE SOUTH 43°32'52" WEST 78.39 FEET TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 46, DISTANT THEREON SOUTH 86°56'20" EAST 118.98 FEET FROM THE SOUTHWESTERLY CORNER OF SAID LOT 46; THENCE NORTH 86°56'20" WEST ALONG SAID SOUTHERLY LINE 18.39 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

APN: 207-083-12